Call our next case. Take your time. United States v. Langford. Good morning, your honors. My name is Renee Pietropalo and I represent the appellant, Sean Langford. With the court's permission, I'd like to reserve four minutes for rebuttal. The Sensing Commission has explicitly stated that not every juvenile adjudication is subject to criminal history points. And they explain their reason and comment to 4A1.2. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of juvenile records. If you could slow down just a bit. Sure. And it's for that reason that the commission specifies for an adjudication of delinquency to count for criminal history points, the adjudication has to have resulted in the imposition of an adult or juvenile sentence. Now Pennsylvania law tells us what the available sentencing options are for a juvenile court in a disposition proceeding. And they are probation, commitment, fine, changes of custody. And here, the juvenile court, according to the probation officer, found adjudicated delinquent, semicolon, petition discontinued, defendant to provide DNA sample. We're at paragraph 33. Paragraph 33 of the PSR. Does it matter that at the end of that discussion, at the bottom, at the end of the paragraph, it says on October 28, the defendant was adjudicated delinquent in this matter and committed that date to the YDC in Newcastle on the robbery case? No, it doesn't matter. Because there are two separate adjudications. Paragraph 32 is the robbery adjudication. He's adjudicated in the beginning of October. There are separate offenses. One, I think, occurred in March. And paragraph 33 occurred in July of that year. He's adjudicated delinquent in early October for paragraph 32. And the court says we're going to defer disposition, I think, until October 28. At October 28, the court at paragraph 33 adjudicates him delinquent for the attempted auto theft and also has a disposition. It can apparently also dispose of the earlier paragraph 32 adjudication by imposing all of those conditions that you see with the YDC placement. So you're saying the committal was just on the robbery case, notwithstanding the fact that it's included at paragraph 33? Everyone agrees to that. The probation officer agreed there was no imposition of sentence at paragraph 33. And he says the reason is because the court had already imposed whatever it imposed at paragraph 32. So there's no dispute in the record that the YDC placement solely goes to paragraph 32. Was the judge just wrong here? Yes. But the judge didn't make a formal ruling on this, so we don't have his reasoning. We have what the probation officer argued, and then we have him imposing a criminal history point. And again, not based on a sentence. What was the calculation under the guidelines? The guideline calculation, this gave him one point which changed his criminal history to category 3. What was the range? It was a 40 – excuse me, one second. It turned into from – 71, let's see. It was 46 to 57 months. And without it, it would have been 37 to 46 months. I might have that wrong by one month. Okay. So there's a distinct overlap between what you want and what the – By one month. Right. He got the low end of the guidelines, the 47. And without the one point, that's the high end of the guidelines. Is this harmless error? No. It's not harmless error. The remedy for this error, for an erroneous calculation of the guidelines in the first instance, has to be a remand for resentencing. Pardon me. You're speaking so fast, my ears can't keep up. You said an erroneous calculation of the guideline, which is step one under Gunther, requires a remand. Yes. What's your authority for that? There are – I can think of three reasons off the top of my head. One of them – How about case law? The case – Gunther, first of all, is the primary case. Gunther tells us that there's a three-step process to sentencing. First, guidelines calculation. Second, are there any departures? And third, the 3553A factors. But our review is for reasonableness. Yes. Well, I could point out that just last week, in the United States versus Di Ambrosio, this court – it was an unpublished opinion. The panel is – the judge is in key. Yeah. I'm aware of that. But it's an NPO. Yes. But the court there says the fact that Booker – Non-presidential opinion. The fact that Booker renders the guidelines advisory has no impact whatever on the sentencing court's responsibility to accurately calculate the guidelines in the first instance. And this is consistent with the application of Gunther. And that's because if you don't have the guidelines calculated in the first instance, it skews all three of the steps of Gunther. First of all, we know that – Is that so? The purpose of the guidelines, as I understand, is to prevent undue disparity in sentences nationally. Now, here you have a merger of the guideline you want and the guideline the judge imposed. So doesn't that take care of the disparity purpose of the guidelines? I say no. And there's several reasons. One, this isn't a situation – just as a matter of what happened below – this isn't a situation where the judge says, notwithstanding any of the arguments you attorneys are making to me about what the guidelines calculation is, I would have given this defendant 130 months no matter what. In that case, maybe you could make a harmless error analysis. But we don't have that in this case. There's a couple of other points. We know – Was it clear from the record that the judge wanted to go at the bottom range of the guideline? I don't think it was. He went through the 3553 factors and then came up with the sentence. Exactly. I don't think it is either. The government in their briefs seem to say that, but I don't see that from the record. I wish that I could see that from the record, but I don't. I think it's just ambiguous. And I think that what we know today, post Booker, is that the courts are using the guidelines as an anchor. Cooper tells us he used the But we also know as a practical effect that they're more than just a starting point. They are the critical point that judges, just as a matter of fact, are following. They're anchored to the guidelines. But if we reverse and send it back when there's an improper guideline calculation, without looking to overall reasonableness, we are in effect making the – I guess we're not making the guidelines mandatory, but I just have a hard time finding the – reconciling the concept of reasonableness as our review point as compared to if you made a mistake in calculating the guideline range in the first instance. Let's say you got 29 points and we think that there should have been 27, and yet overall the sentence was reasonable. How do we then analyze to send it back, to reverse? Yes, Booker says appellate review is for reasonableness. Reasonableness is an abuse of discretion. An error of law is an abuse of discretion. We know that 3553A says you have to consider the guidelines as one of the 353A factors. If that factor has been incorrectly calculated, that's an error of law, and that makes the sentence unreasonable. But would your argument then go this way, that any time there is an incorrect calculation, no matter how minor, that it infects the sentencing procedure to the point that it's per se incorrect, that it's per se unreasonable? I say yes under the current reading of the guidelines under Gunter, as the courts are an anchor, under Cooper where it says the guidelines are a starting point. If your starting point isn't correct, how can your ending point be reasonable? You can't really review for reasonableness if the court himself, in conducting his sentencing, didn't start with the right starting point. You're going back to your theory that the guidelines are an anchor. I thought post-Booker they were not that way, that the sentencing judge had discretion. Theoretically they are one factor among many, but we know in practice that they are still the starting point, the key starting point, and that's what the courts are relying on more than any other factor. The Supreme Court hasn't told us yet which factor is entitled to the most. There are a couple of circuits. In fact, in the United States v. Jackson, we cited a couple of circuits in case 11 that have said that an error in the calculation requires remand. We haven't spoken to that issue. Do you know of how other courts, have you looked at how the courts are in fact treating this issue? Yes. As a matter of fact, I did that same research last night in preparation for the argument, and I found the same cases where they're saying Booker, if it's an erroneous calculation of the guidelines in the first instance, and some of those circuits also are applying the Gunter three-step analysis, that you have to remand it to give the court another chance to first correctly calculate the guidelines and then conduct its 35-50 degree analysis, which can't be divorced from the correct calculations. They're so interdependent that you can't conduct a reasonable analysis. It's just a shame. We sent everything back after Booker, and now we send everything back if they're off by one point. Can I add two other points about that? We also have a statute that 3742F, Booker did not affect 3742F in that mandate. If the sentence was imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings. Do we then look at what the sentencing court did and say, no, it really wasn't as a result. There was an incorrect application of the guidelines, but when the judge said, I don't care what the guidelines are, this is the sentence I'm giving, then we do not send it back? Are we going to try to have us judge exactly the basis for a sentence that was given out by the district court? I can understand the court's reluctance to state a rule to that effect, but we know the court didn't say that here. So we don't have a record where maybe harmlessness could be at issue. So you would say if that were in the record, if the sentencing court said, and by the way, even if I'm off on the guidelines, I look at 35-53, and I don't care what the guidelines range. Well, that might be my case next week, so of course I'm not going to agree to that. But I also think that that's a difficult proposition given the reality of where we are today, and we know as a matter of practice that the guidelines, yes, they're advisory, but the courts aren't treating them as advisory. You can look at Cunningham, I think that's a Tenth Circuit case where the judge really makes an impassioned plea. I think it's a Tenth Circuit judge telling the district courts, look at this. It's supposed to be advisory, and none of these cases are going below the guidelines, or we're never reversing when it's a within-guidelines sentence. So we know that they're more than just one factor in the 35-53 analysis, and that's why it's critical to remand it to the district court when he's looking at them with such a degree of importance. And we also know that just by reading the sentence in your transcript. You're over in your time, and I think what we'll do is reserve other questions. Okay, thank you. Thank you. Sorry to cut you off. May it please the Court. Rebecca Haywood on behalf of the United States. And this case is about one criminal history point. The district court's calculation in the first instance was correct about that criminal history point. There was an adjudication of guilt with regard to the auto theft offense. But there had to have been a sentence. Yes, there was a sentence. The discontinuance was the sentence. And this court has stated in Gibbs that a sentence under 4A.1.2 does not have to have any punitive or adverse consequences. The only circumstance, once there's an adjudication of guilt, putting aside status offenses and offenses over five years old, the only disposition that will not result in a sentence is a juvenile diversion. And this case clearly did not involve a diversion from the juvenile process. And, in fact, there had been a diversion with regard to paragraph 29 of the pre-sentence report. Mr. Lankford's very first involvement with the juvenile process resulted in a diversion. Pennsylvania law specifically provides in the juvenile context that there is a diversion aid program that juveniles can be placed in. But this was not the case. I thought you were pushing federal law, not state law, as to what was the sentence. Certainly. But in order to understand the Pennsylvania state system, that there is basically a diversionary process that he could have been placed in. And under 4A1.2F, if this had been a juvenile diversion, certainly it would not have been a sentence. But it was not a diversion. It was a discontinuance. Well, it's a discontinuance of a proceeding. How is that a sentence? Because there had been an adjudication of guilt on the sentence. And he was already placed at the Youth Development Center in Newcastle. And, in fact, it is almost like a concurrent sentence. That is the highest level of punishment that was available to the juvenile system with regard to Mr. Lankford. And, in fact, he actually committed this auto offense. He had been arrested initially on the armed bank robbery offense. He was charged as an adult. He was placed on electronic monitoring, and he failed to appear. He was only then later arrested attempting to break into a car. So these clearly were two separate offenses intervening arrests. And at the time that he was sentenced on the auto offense, he had already been committed to an institution. So, obviously, as a matter of common sense, the juvenile court, looking at this, decided to discontinue the current petition in light of his placement in the Youth Development Center. And, again, this court has stated in Gibbs there does not have to be any punitive consequence for there to be a sentence. Well, but there has to be adverse consequences, doesn't it? No. Gibbs specifically says there does not have to be an adverse consequence. And, in fact, a case I cited in my brief, Bell, it was a district court decision from Ohio. There had simply been an admonishment, and the court found that was sufficient to constitute a juvenile sentence under the guidelines. Do you have any authority that says specifically that a discontinuance is a sentence? Certainly. I do not. And that language is unusual language, and I did not have any authority for that specific proposition. But, again, in looking at the context of what actually happened in this particular case, where Mr. Lankford was already within the juvenile system, it is clear the intent of what was happening with regard to this case. And speaking to the point that Your Honor has addressed with opposing counsel about harmless error, the guideline range, even the guideline range advocated by Mr. Lankford, which is 37 to 46 months, using that range, the sentence imposed on the bank robbery counts is within that range, and the advisory guideline is only one factor under 3553A. The sentence was within? The sentence was 46 months of counts one and two. Oh, I thought it was 47. I believe it's 46 months. His total sentence was 130 months, 46 on counts one and two, and 84 on the mandatory. But at one point it's at the bottom of the guideline, and at the other it's at the top looking at the calculation. So if the judge did it thinking of sentencing at the lower end of the guideline, and we find the guideline, as it should have been applied, would put this sentence at the higher end, then shouldn't we give the judge the opportunity, knowing that if we find he made a mistake, to resentence? Because he may have wanted to go at the lower end. In certain cases, I don't dispute that some judges do appear to be applying the guidelines and sticking within the guidelines, and that being one of the primary factors. In this case, the district court judge went through an extremely thorough analysis of each one of the 3553 factors. He talked about Mr. Lankford's continuing and increasing and escalating violent behavior as a juvenile, and went through all of the factors, not just 3553A4, which is the guideline range. So clearly, in this particular case, it is clear that this was one factor, and this district court judge felt this was an appropriate sentence and, in fact, is a reasonable sentence. And it is true that 18 U.S.C. 3742F does state that a remand is required, but the Williams decision from the Supreme Court in 1991 that this court cites in Jackson specifically addressed that provision and noted there could be a potential for harmless error, and that was pre-Booker. We're in a post-Booker world where the guidelines for advisory are one factor. So in context, to remand this case over a potential misapplication of one criminal history point, when the district court thoroughly explained its sentence and the sentence imposed is reasonable, it would just not be an efficient use of judicial resources in this case. Questions? No, thank you. Thank you. I'll start out by just talking about Gibbs for a moment. Gibbs was cited in the 28J letter, but Gibbs doesn't control this case. There's a few reasons why. The entire discussion occurs in a footnote, and we don't know the contours of the defendant's argument from that footnote, and the court doesn't state a rule that we can take away from Gibbs. It says, Brown contends an adjudication was improperly included in his criminal history because there was no evidence the conviction resulted in adverse consequences. The court goes on to say, Under 4A.1.1, there's no requirement that the juvenile conviction have resulted in adverse consequences. That is required. But the court continues, the court doesn't define adverse consequences, but in the next sentence it says, the defendant received no prison time, which implies prison time is what they're talking about by adverse consequences. And Mr. Langford never argued that petition discontinued doesn't equal a sentence because he didn't serve time. So that's not the issue. The other point to make about Gibbs is, since it's so vague and you can't take anything away from that footnote, I did some research on Westlaw and found the briefs that were filed. The government's brief, the government advises this court in its brief that the district court in Gibbs found Brown's sentence was subsequently suspended. So that's totally different, and it is a sentence, of course, certainly. So it's totally different from Mr. Langford. And we know from Mr. Brown's brief that he was actually arguing a proof issue, that the point itself was based on speculation and not proof. So it has nothing to do with, and it's not in any way similar to Mr. Langford's issues in the appeal. Well, in this case, the district judge went over the matter very carefully. He said bank robbery is a serious offense, especially when a loaded firearm is displayed. The defendant put the lives of everyone in the bank in jeopardy, including his own. At his age, with his criminal background, he understood the possible consequences of his actions. This offense is of such a serious nature and demonstrated such a respect for law. Without meaningful incarceration, he will continue to engage in criminal activity. Right. Doesn't that justify the sentence he imposed here? No, it doesn't, Your Honor. The use of the firearm is fully factored in because he got an 84-month mandatory minimum sentence. The bank robbery itself is totally factored in. It's the reason for the high guidelines. All of that is factored into the guidelines calculation. And certainly, six or seven months less, which is what would happen without that point, is still a meaningful sentence. I would point out to the court, there was a co-defendant in this case. Mr. Langford was 18. He had never served a day in adult prison. This was his first adult conviction. And he committed this offense, according to the psychologist, to impress his 31-year-old career criminal uncle who planned it, and he was the guy who left over the counter. Mr. Langford's a 31-year-old career criminal. The judge granted a shook departure if he said Mr. Collier's offenses were youthful, indiscretions, or something like that, and he departed downward. He was supposed to be in an advisory range of 188 to 235, plus the 84-month mandatory minimum. He ended up getting only 11 months more than Mr. Langford. So you mentioned disparity earlier. If that's not disparity, but between similarly situated defendants, I don't know what is. And I am confident that if the court were presented with this argument on remand, it would recognize that disparity and likewise consider a shook departure at the very least for Mr. Langford because, again, all of his criminal history points are attributable to these juvenile offenses. Thank you, counsel. The case is well argued. We'll take it under advisement.